UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BONNY Q.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-5856-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by discounting her subjective allegations and failing to recontact certain medical sources to clarify their opinions. (Dkt. # 17 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1951, has a college degree, and has worked as a chemical dependency counselor, chemical dependency instructor, crisis interventionist, police dispatcher, and mental health case manager. AR at 280. Plaintiff was last gainfully employed in January 2015. *Id.*

ORDER - 1

In February 2015, Plaintiff protectively applied for benefits, alleging disability as of January 23, 2015. AR at 254-60. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 185-87, 192-200. After the ALJ conducted a hearing on April 25, 2017 (*id*. at 84-151), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 21-33.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity during the period between her alleged onset date (January 23, 2015) through her date last insured ("DLI") of September 30, 2017.

Step two: Through the DLI, Plaintiff's cervical spine degenerative disc/joint disease, lumbar spine degenerative disc/joint disease, and spondylolisthesis were severe impairments.

Step three: These impairments did not meet or equal the requirements of a listed impairment through the DLI.[2]

Residual Functional Capacity: Through the DLI, Plaintiff could perform sedentary work with additional limitations: she could never climb ladders/ropes/scaffolds and could only occasionally climb ramps/stairs. She could occasionally balance, stoop, kneel, crouch, and crawl. She was limited to only occasional exposure to vibration and extreme cold temperatures. She was limited to only occasional operation of foot controls bilaterally.

Step four: Through the DLI, Plaintiff could perform her past relevant work as a substance abuse counselor and caseworker.

*Id*. at 21-33.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. §§ 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A. The ALJ Did Not Err in Failing to Recontact Medical Sources**

Plaintiff contends that the ALJ erred in failing to recontact two medical sources. The Court will address each medical source in turn.

*1. Legal Standards*

"The ALJ in a social security case has an independent duty to fully and fairly develop the

record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and quoted sources omitted). That duty "exists even when the claimant is represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *accord Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1988)).

    2.  *John Miller, M.D.*

In October 2014 (before Plaintiff had stopped working and before her alleged disability onset), Plaintiff asked Dr. Miller, her treating neurologist, whether she was disabled. Dr. Miller's notes on this issue read as follows:

> Patient also asks about whether or not she may be disabled. She certainly has a variety of issues which certainly may be disabling in their multitude. I would not be able to definitively determine this, but it is certainly feasible that Ms. Quintana would meet the medical criteria for disability. She would certainly have to go through the process; however.

AR at 408. Plaintiff posits that this note amounts to an opinion as to whether she was disabled, and thus the ALJ had a duty to recontact Dr. Miller to determine the basis for that opinion under Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (Jul. 2, 1996)).[3] (Dkt. # 17 at 5.)

Plaintiff's argument is not persuasive. Dr. Miller's recorded response to Plaintiff's question explicitly indicates that he declined to offer an opinion as to whether Plaintiff is

---

[3] This SSR was rescinded March 27, 2017, but nonetheless applies to the ALJ's decision because Plaintiff's application was filed before the rescission date. *See* 82 Fed. Reg. 15263-01 (Mar. 27, 2017) ("This rescission will be effective for claims filed on or after March 27, 2017.").

disabled. AR at 408. He also noted that Plaintiff would have to "go through the process" to apply for benefits in order to be eligible. *Id*. This portion of Dr. Miller's note thus does not constitute an opinion on an issue reserved to the Commissioner, because Dr. Miller specifically refused to provide an opinion as to whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1527(d) (defining issues reserved to the Commissioner). Accordingly, SSR 96-5p does not provide a basis for arguing that the ALJ should have recontacted Dr. Miller.

        *3.     Scott Alvord, Psy.D.*

Dr. Alvord performed a consultative examination of Plaintiff in August 2015 and wrote a narrative report describing Plaintiff's symptoms and limitations. AR at 439-44. In relevant part, Dr. Alvord opined that Plaintiff "could function on some level occupationally should she choose, consistent with [her] physical and psychiatric issues[.]" *Id*. at 443. Dr. Alvord also found that Plaintiff would have no difficulties performing simple or complex tasks. *Id*. at 444. The ALJ assigned significant weight to Dr. Alvord's opinion. *Id*. at 30-31.

Plaintiff argues that Dr. Alvord's opinion is ambiguous as to whether she could perform her prior work as a substance abuse counselor and/or caseworker, which, with regard to reasoning, require employees to:

> [a]pply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical instructions in mathematical or diagrammatic form. Deal with several abstract and concrete variables.

*See* Dictionary of Occupational Titles ("DOT") 045.107-058, *available at* 1991 WL 646633 (Jan. 1, 2016) (job definition of substance abuse counselor); DOT 195.107-010, *available at* 1991 WL 671569 (Jan. 1, 2016) (job definition of caseworker). Plaintiff argues that Dr. Alvord's opinion is ambiguous as to whether she could perform this "level 5" reasoning.

ORDER - 5

On the contrary, Dr. Alvord's opinion explicitly indicates that Plaintiff would have no difficulty performing both simple, repetitive tasks as well as detailed and complex tasks. AR at 444. Dr. Alvord indicated that he found "little evidence of a primary cognitive disorder here." *Id.* at 443. Although Plaintiff emphasizes that Dr. Alvord's opinion describes Plaintiff with a depressed mood, with a tearful and downtrodden affect, and a history of suicidal ideation (dkt. # 21 at 3), none of these findings pertains to Plaintiff's reasoning abilities. Plaintiff also notes that Dr. Alvord described Plaintiff's intellectual functioning in the "low average" range, but again, this finding does not relate to her reasoning abilities: in fact, Dr. Alvord emphasized her "low average" intellectual functioning in contrast to her allegations of memory, focus, and attention deficits. *Id.* at 443. Moreover, "low average" intellectual functioning is not necessarily inconsistent with an ability to perform "level 5" reasoning.

Given that Dr. Alvord examined Plaintiff after she had stopped working, and she told him that she was not interested in pursuing other work (AR at 440), Dr. Alvord's comment that Plaintiff "could function on some level occupationally should she choose" (*id*. at 443) highlights that even though Plaintiff was not currently working, she was nonetheless capable of working. The Court does not interpret Dr. Alvord's reference to Plaintiff's ability to work on "*some level* occupationally" to mean that she was unable to perform high-level reasoning, but that her ability to work was limited by her "physical and psychiatric issues." *Id*. at 443 (emphasis added). Because Dr. Alvord did not identify any limitations that would preclude Plaintiff from performing "level 5" reasoning, the Court does not find the ambiguity alleged by Plaintiff within Dr. Alvord's opinion.

It should also be emphasized that Dr. Alvord was not tasked with determining whether Plaintiff could perform her past relevant work; his medical source statement addresses Plaintiff's

ability to perform workplace functions generally. AR at 444. It is the ALJ who must determine whether Plaintiff retains the capacity to perform past work. *See* 20 C.F.R. §§ 404.1527(d), 404.1560. Plaintiff has not identified a clear or even probable conflict between Dr. Alvord's opinion and Plaintiff's ability to perform the reasoning required in the jobs the ALJ relied upon at step four. Because the Court finds that Dr. Alvord's opinion is not ambiguous as to Plaintiff's cognitive functioning, Plaintiff has not shown that the ALJ erred in failing to recontact Dr. Alvord for clarification.

**B.    The ALJ Did Not Err in Discounting Plaintiff's Subjective Allegations**

The ALJ discounted Plaintiff's testimony as inconsistent with the record, citing (1) evidence that many of her conditions were less severe than alleged and would not preclude work activity, and (2) evidence that she engaged in activities inconsistent with her alleged limitations. AR at 29-30.

Plaintiff argues that the ALJ erred in failing to cite activities showing that she could not perform her past work. (Dkt. # 17 at 8.) This argument reflects a misunderstanding of the ALJ's findings with regard to Plaintiff's activities. There are two ways in which an ALJ can rely on a claimant's activities to discount his or her allegations: if the activities contradict the claimant's testimony, or if the activities demonstrate the existence of transferable work skills. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). In this case, the ALJ cited activities — such as socializing with friends, making jewelry, playing card games, reading, watching television, walking, swimming, and playing with dogs — that he reasonably found contradicted Plaintiff's alleged concentration, memory, social functioning, and energy deficits. AR at 30. The ALJ did not cite those activities as evidence of the existence of transferable work skills. Thus, even if the activities cited by the ALJ fail to demonstrate that Plaintiff can perform her past work, this

would not establish error in the ALJ's decision because that is not the reason for which he cited them. Plaintiff has failed to meet her burden to show harmful legal error in the ALJ's assessment of her subjective allegations.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 10th day of June, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge